IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JAMES MCLEROY, INDIVIDUALLY | ) | |
| AND ROSIE GRAY, AS ADMINISTRATOR OF | ) | |
| THE ESTATE OF SHAMAR MCLEROY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO.: |
| FULTON COUNTY GEORGIA, A POLITICAL | ) | |
| SUBDIVISION OF THE STATE OF  GEORGIA, | ) | |
| NAPHCARE, INC., | ) | |
| SHERIFF PATRICK LABAT, | ) | |
| BRANDON THOMPSON, CATHERINE | ) | |
| HARRELL, EARL DELK, FATISHA JACKSON, | ) | |
| JANESE ATLOW, JERRICA WHITE, JOAN | ) | |
| TAPPER, KA-JANA WILLIAMS, KAREENA | ) | |
| CALHOUN, KIMBREYA OTEY, LACRETIA | ) | |
| PENN, LATERRIA SEWELL, MAKISHA | ) | |
| ADAMS, MANDI MPEZO, MAYA MOORE, | ) | |
| MELISSA MATHEWS, NATASHA STROUD, | ) | |
| SAMANTHA SCOTT, SANDRA KWARTENG, | ) | |
| SHERRIE KEYES, STANLEY HIMES, | ) | |
| TIFFANY HAIRSTON, ALLEN VAVAL, | ) | |
| AQUILLA WHITFIELD, ARLETHIA PRYOR, | ) | |
| BERONICA PHILPOT, BISAKHA ROY, | ) | |
| CHAQUETTA CORBIN, CHRISTOPHER | ) | |
| PHILBERT, COURTNEY NEMARD, | ) | |
| DEMARCUS HARRIS, FELANDRIAS GASTON, | ) | |
| FREDERICK CALLAWAY, JR., JAMARCUS | ) | |
| WILLIAMS, KAWANA JENKINS, KEVIN | ) | |
| WALTER MARTIN, KIMBERLY JAMES, | ) | |
| KUBAZA HAWTHORNE, SR., LADAIN | ) | |

1

MCDOWELL, MARCUS PRESBURY-LOMAX,    )
RENEKA C. BARNES, SHAQUILLA SAVOY,    )
APFOLLO ERON HARVEY, JR., JAMILLA    )
NICOLE SAADIQ, JOSEPH ROBERT LOVEJOY, )
JR., ROSEMARY O. MORRIS-HECKSTALL,    )
OLUBUKOLA FUNMI OLATOTO, JANNET    )
MAUREEN MORAIS, SAMANTHA SCOTT,    )
DEMARCUS MALIK ARNOLD, DAJUAN    )
CARLAE WALKER, BROOK BREYSHAWN    )
HAMMOND, ANTHONY N. OKONKWO,    )
STEPHANIE ROBINSON COOPER, ANN    )
HOLDER, JOHN DOE NO. 1, JOHN DOE NO. 2,    )
JOHN DOE NO. 3, JOHN DOE NO. 4, JOHN DOE    )
NO. 5, AND JOHN DOE NO. 6,    )
ALL IN THEIR    )
INDIVIDUAL CAPACITIES,    )
    )
     Defendants.    )

## COMPLAINT FOR DAMAGES

COMES NOW plaintiffs and file this their Complaint against Defendants:

## INTRODUCTION

1.

This civil action is brought under 42 U.S.C. §1983 for the October 19, 2022

wrongful death of Shamar McLeroy in the Fulton County Jail.  Plaintiff alleges that

the Defendants were deliberately indifferent to a known risk of serious harm to

Shamar McLeroy, a pre-trial detainee, when Shamar McLeroy was murdered by an

unattended inmate named Jeremiah Collier who was a known murderer with

mental health issues.

## JURISDICTION

2.

This action is brought pursuant to 42 U.S.C. §1983 and §1988, as well as the Fourteenth Amendment of the United States Constitution.  This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 1343(a)(3)(4).

3.

All parties are subject to the jurisdiction of this Court.

4.

All acts or omissions alleged in the Complaint occurred in the Northern District of Georgia, where at least one Defendant resides and, therefore, venue is properly within this district under 28 U.S.C. §1391(b)(2).

## PARTIES

5.

Plaintiff James McLeroy is the biological father of Shamar McLeroy.  He is a proper individual to pursue damages for the full value of the life of the decedent Shamar McLeroy, pursuant to O.C.G.A. §19-7-1, inasmuch as Shamar McLeroy was unmarried and did not have any children at the time of his untimely death.

Plaintiff Rosie Gray, pursuant to Temporary Letters of Administration issued on September 4, 2024, is the temporary administrator legally authorized to

represent the interest of the estate of Shamar McLeroy.  In such capacity, Rosie

Gray seeks recovery, pursuant to O.C.G.A. §51-4-5, for all damages allowed for

pain and suffering as well as funeral, medical, and other necessary expenses

resulting from the injury and death of the decedent Shamar McLeroy.

6.

Shamar McLeroy was a citizen and resident of Georgia. He was born on

December 12, 2001.  He was twenty (20) years old at the time of his death.

7.

Defendant Fulton County is a governmental entity and political subdivision

of the State of Georgia and thus constitutes a state actor.  Through its Board of

Commissioners, Defendant Fulton County provides funding for the operation of

the Fulton County Jail.  Defendant Fulton County may be served with process

through the Chairperson of its Board of Commissioners, Rob Pitts, at 141 Pryor

Street SW, 10th Floor, Atlanta, GA 30303.  Defendant Fulton County is subject to

the jurisdiction and venue of this Court.

8.

NaphCare, Inc. ("NaphCare") is a corporation, and is authorized to transact

business in Georgia.  NaphCare may be served upon its registered agent,

Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree

Corners, Georgia 30092, Gwinnett County.  NaphCare is subject to the jurisdiction and venue of this Court.

9.

Defendant Patrick Labat is a citizen of Georgia and resides within the Northern District of Georgia.  Defendant Labat may be served with process at 185 Central Avenue SW, 9th Floor, Atlanta, Georgia 30303.  Defendant Labat is subject to the jurisdiction and venue of this Court.

10.

At all times relevant to this action, Defendant Patrick Labat was the duly elected Sheriff of Fulton County, Georgia.  Defendant Labat was responsible for the day-to-day operation of the Fulton County Sheriff's Office, including the Fulton County Jail.  Defendant Labat was responsible for ensuring and maintaining the physical safety and welfare of pre-trial detainees at the Fulton County Jail.  In his capacity as Sheriff, Defendant Labat had custody, control, and was in charge of the Jail, Jail staff, and the detainees/inmates housed in the Jail.

11.

At all times relevant to this action, Defendant Labat acted under the color of state law.  Defendant Labat is being sued for damages in his individual capacity.

12.

Defendant Brandon Thompson (Defendant Thompson), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Thompson is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Thompson may be served with process at his residence address which is not provided due to his work status.  Defendant Thompson is sued in his individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Thompson, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

13.

Defendant Catherine Harrell (Defendant Harrell), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Harrell is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Harrell may be served with process at her residence address which is not provided due to her work status.  Defendant Harrell is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Harrell, upon information and belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the

Fulton County Jail.

14.

Defendant Earl Delk (Defendant Delk), at the time of the events described in

this Complaint, was working at the Fulton County Jail.  Upon information and

belief, Defendant Delk is a citizen and resident of the State of Georgia, residing in

the Northern District of Georgia.  Defendant Delk may be served with process at

his residence address which is not provided due to his work status.  Defendant

Delk is sued in his individual capacity and is subject to the jurisdiction of the

Court.  In this capacity, Defendant Delk, upon information and belief, had

responsibilities including the intake and classification of Jeremiah Collier that took

place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

15.

Defendant Fatisha Jackson (Defendant Jackson), at the time of the events

described in this Complaint, was working at the Fulton County Jail.  Upon

information and belief, Defendant Jackson is a citizen and resident of the State of

Georgia, residing in the Northern District of Georgia.  Defendant Jackson may be

served with process at her residence address which is not provided due to her work

status.  Defendant Jackson is sued in her individual capacity and is subject to the

jurisdiction of the Court.  In this capacity, Defendant Jackson, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

16.

Defendant JaNese Atlow (Defendant Atlow), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Atlow is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Atlow may be served with process at her residence address which is not provided due to her work status. Defendant Atlow is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Atlow, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

17.

Defendant Jerrica White (Defendant White), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant White is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant White may be

served with process at her residence address which is not provided due to her work status.  Defendant White is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant White, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

18.

Defendant Joan Tapper (Defendant Tapper), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Tapper is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Tapper may be served with process at her residence address which is not provided due to her work status.  Defendant Tapper is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Tapper, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

19.

Defendant Ka-Jana Williams (Defendant Williams), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon

information and belief, Defendant Williams is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Williams may be served with process at her residence address which is not provided due to her work status.  Defendant Williams is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Williams, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

20.

Defendant Kareena Calhoun (Defendant Calhoun), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Calhoun is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Calhoun may be served with process at her residence address which is not provided due to her work status.  Defendant Calhoon is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Calhoon, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

21.

Defendant Kimbreya Otey (Defendant Otey), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Otey is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Otey may be served with process at her residence address which is not provided due to her work status.  Defendant Otey is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Otey, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

22.

Defendant Lacretia Penn (Defendant Penn), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Penn is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Penn may be served with process at her residence address which is not provided due to her work status. Defendant Penn is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Penn, upon information and belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

23.

Defendant Laterria Sewell (Defendant Sewell), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Sewell is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Sewell may be served with process at her residence address which is not provided due to her work status. Defendant Sewell is sued in her individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Sewell, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

24.

Defendant Makisha Adams (Defendant Adams), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Adams is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Adams may be served with process at her residence address which is not provided due to her work

status.  Defendant Adams is sued in her individual capacity and is subject to the

jurisdiction of the Court.  In this capacity, Defendant Adams, upon information and

belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the

Fulton County Jail.

25.

Defendant Mandi Mpezo (Defendant Mpezo), at the time of the events

described in this Complaint, was working at the Fulton County Jail.  Upon

information and belief, Defendant Mpezo is a citizen and resident of the State of

Georgia, residing in the Northern District of Georgia.  Defendant Mpezo may be

served with process at her residence address which is not provided due to her work

status.  Defendant Mpezo is sued in her individual capacity and is subject to the

jurisdiction of the Court.  In this capacity, Defendant Mpezo, upon information and

belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the

Fulton County Jail.

26.

Defendant Maya Moore (Defendant Moore), at the time of the events

described in this Complaint, was working at the Fulton County Jail.  Upon

information and belief, Defendant Moore is a citizen and resident of the State of

Georgia, residing in the Northern District of Georgia.  Defendant Moore may be

served with process at her residence address which is not provided due to her work

status.  Defendant Moore is sued in her individual capacity and is subject to the

jurisdiction of the Court.  In this capacity, Defendant Moore, upon information and

belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the

Fulton County Jail.

27.

Defendant Melissa Mathews (Defendant Mathews), at the time of the events

described in this Complaint, was working at the Fulton County Jail.  Upon

information and belief, Defendant Mathews is a citizen and resident of the State of

Georgia, residing in the Northern District of Georgia.  Defendant Mathews may be

served with process at her residence address which is not provided due to her work

status.  Defendant Mathews is sued in her individual capacity and is subject to the

jurisdiction of the Court.  In this capacity, Defendant Mathews, upon information

and belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the

Fulton County Jail.

28.

Defendant Natasha Stroud (Defendant Stroud), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Stroud is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Stroud may be served with process at her residence address which is not provided due to her work status.  Defendant Stroud is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Stroud, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

29.

Defendant Samantha Scott (Defendant Scott), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Scott is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Scott may be served with process at her residence address which is not provided due to her work status.  Defendant Scott is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Scott, upon information and belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

30.

Defendant Sandra Kwarteng (Defendant Kwarteng), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Kwarteng is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Kwarteng may be served with process at her residence address which is not provided due to her work status.  Defendant Kwarteng is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Kwarteng, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

31.

Defendant Sherrie Keyes (Defendant Keyes), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Keyes is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Keyes may be served with process at her residence address which is not provided due to her work status.  Defendant Keyes is sued in her individual capacity and is subject to the

jurisdiction of the Court.  In this capacity, Defendant Keyes, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

32.

Defendant Stanley Himes (Defendant Himes), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Himes is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Himes may be served with process at his residence address which is not provided due to his work status.  Defendant Himes is sued in his individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Himes, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

33.

Defendant Tiffany Hairston (Defendant Hairston), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Hairston is a citizen and resident of the State of

Georgia, residing in the Northern District of Georgia. Defendant Hairston may be served with process at her residence address which is not provided due to her work status. Defendant Hairston is sued in her individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Hairston, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

34.

Defendant Allen Vaval (Defendant Vaval), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Vaval is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Vaval may be served with process at his residence address which is not provided due to his work status. Defendant Vaval is sued in his individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Vaval, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

35.

Defendant Aquilla Whitfield (Defendant Whitfield), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon

information and belief, Defendant Whitfield is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Whitfield may be served with process at her residence address which is not provided due to her work status. Defendant Whitfield is sued in her individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Whitfield, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

36.

Defendant Arlethia Pryor (Defendant Pryor), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Pryor is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Pryor may be served with process at her residence address which is not provided due to her work status. Defendant Pryor is sued in her individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Pryor, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

37.

Defendant Beronica Philpot (Defendant Philpot), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Philpot is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Philpot may be served with process at her residence address which is not provided due to her work status. Defendant Philpot is sued in her individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Philpot, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

38.

Defendant Bisakha Roy (Defendant Roy), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Bisakha Roy is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Bisakha Roy may be served with process at Bisakha Roy's residence which is not provided due to work status. Defendant Bisakha Roy is sued in Bisakha Roy's individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Roy, upon information and belief, had responsibilities including the intake and classification

of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

39.

Defendant Chaquetta Corbin (Defendant Corbin), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Corbin is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Corbin may be served with process at her residence which is not provided due to her work status. Defendant Corbin is sued in her individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Corbin, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

40.

Defendant Christopher Philbert (Defendant Philbert), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Philbert is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Philbert may be served with process at his residence which is not provided due to his work status. Defendant Philbert is sued in his individual capacity and is subject to the

jurisdiction of the Court.  In this capacity, Defendant Philbert, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

41.

Defendant Courtney Nemard (Defendant Nemard), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Nemard is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Nemard may be served with process at her residence which is not provided due to her work status. Defendant Nemard is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Nemard, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

42.

Defendant Demarcus Harris (Defendant Harris), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Harris is a citizen and resident of the State of

Georgia, residing in the Northern District of Georgia.  Defendant Harris may be

served with process at his residence which is not provided due to his work status.

Defendant Harris is sued in his individual capacity and is subject to the jurisdiction

of the Court.  In this capacity, Defendant Harris, upon information and belief, had

responsibilities including the intake and classification of Jeremiah Collier that took

place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

43.

Defendant Felandrias Gaston (Defendant Gaston), at the time of the events

described in this Complaint, was working at the Fulton County Jail.  Upon

information and belief, Defendant Gaston is a citizen and resident of the State of

Georgia, residing in the Northern District of Georgia.  Defendant Felandrias

Gaston may be served with process at Felandrias Gaston's residence which is not

provided due to work status.  Defendant Felandrias Gaston is sued in Felandrias

Gaston's individual capacity and is subject to the jurisdiction of the Court.  In this

capacity Defendant Gaston, upon information and belief, had responsibilities

including the intake and classification of Jeremiah Collier that took place on or

about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

44.

Defendant Frederick Callaway, Jr. (Defendant Callaway), at the time of the

events described in this Complaint, was working at the Fulton County Jail.  Upon

information and belief, Defendant Callaway is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Callaway may be served with process at his residence which is not provided due to his work status. Defendant Callaway is sued in his individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Callaway, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

45.

Defendant Jamarcus Williams (Defendant Williams), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Williams is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Williams may be served with process at his residence which is not provided due to his work status. Defendant Williams is sued in his individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Williams, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

46.

Defendant Kawana Jenkins (Defendant Jenkins), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Jenkins is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Jenkins may be served with process at her residence which is not provided due to her work status. Defendant Jenkins is sued in her individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Jenkins, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

47.

Defendant Kevin Walter Martin (Defendant Martin), at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Martin is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Martin may be served with process at his residence which is not provided due to his work status. Defendant Martin is sued in his individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Martin, upon information and belief, had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

48.

Defendant Kimberly James (Defendant James), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant James is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant James may be served with process at his residence which is not provided due to her work status. Defendant James is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant James, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

49.

Defendant Kubaza Hawthorne, Sr. (Defendant Hawthorne), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Hawthorne is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Hawthorne may be served with process at the residence of Defendant Hawthorne which is not provided due to work status.  Defendant Hawthorne is sued in Defendant Hawthorne's individual capacity and is subject to the jurisdiction of the Court.  In

this capacity, Defendant Hawthorne, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

50.

Defendant Ladain McDowell (Defendant McDowell), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant McDowell is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant McDowell may be served with process at the residence of Defendant McDowell which is not provided due to work status.  Defendant McDowell is sued in Defendant McDowell's individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant McDowell, upon information and belief, had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

51.

Defendant Marcus Presbury-Lomax (Defendant Presbury-Lomax), at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Presbury-Lomax is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  He

may be served with process at his residence which is not provided due to his work status.  He is sued in his individual capacity and is subject to the jurisdiction of the Court.  Upon information and belief, he had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

52.

Defendant Reneka C. Barnes (Defendant Barnes), at the time of the events described in this Complaint, was working at the Fulton County Jail.  She is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. She may be served with process at her residence which is not provided due to her work status.  She is sued in her individual capacity and is subject to the jurisdiction of the Court.  Upon information and belief, she had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

53.

Defendant Shaquilla Savoy (Defendant Savoy), at the time of the events described in this Complaint, was working at the Fulton County Jail. She is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. She may be served with process at her residence which is not provided due to her work status.  She is sued in her individual capacity and is subject to the jurisdiction

28

of the Court.  Upon information and belief, she had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

54.

Defendant Apfollo Eron Harvey, Jr. (Defendant Harvey), at the time of the events described in this Complaint, was working at the Fulton County Jail.  He is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. He may be served with process at his residence which is not provided due to his work status.  He is sued in his individual capacity and is subject to the jurisdiction of the Court.  Upon information and belief, he had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

55.

Defendant Jamilla Nicole Saadiq (Defendant Saadiq), at the time of the events described in this Complaint, was working at the Fulton County Jail. She is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. She may be served with process at her residence which is not provided due to her work status.  She is sued in her individual capacity and is subject to the jurisdiction of the Court.  Upon information and belief, she had responsibilities

including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

56.

Defendant Joseph Robert Lovejoy, Jr. (Defendant Lovejoy), at the time of the events described in this Complaint, was working at the Fulton County Jail.  He is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. He may be served with process at his residence which is not provided due to his work status.  He is sued in his individual capacity and is subject to the jurisdiction of the Court.  Upon information and belief, he had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

57.

Defendant Rosemary O. Morris-Heckstall (Defendant Morris-Heckstall), at the time of the events described in this Complaint, was working at the Fulton County Jail. She is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. She may be served with process at her residence which is not provided due to her work status.  She is sued in her individual capacity and is subject to the jurisdiction of the Court.  Upon information and belief, she had responsibilities including the intake and classification of Jeremiah

Collier that took place on or about October 7, 2022 or October 8, 2022 at the

Fulton County Jail.

58.

Defendant Olubukola Funmi Olatoto (Defendant Olatoto), at the time of the

events described in this Complaint, was working at the Fulton County Jail. She is

a citizen and resident of the State of Georgia, residing in the Northern District of

Georgia. She may be served with process at her residence which is not provided

due to her work status. She is sued in her individual capacity and is subject to the

jurisdiction of the Court. Upon information and belief, she had responsibilities

including the intake and classification of Jeremiah Collier that took place on or

about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

59.

Defendant Jannet Maureen Morais (Defendant Morais), at the time of the

events described in this Complaint, was working at the Fulton County Jail. She is

a citizen and resident of the State of Georgia, residing in the Northern District of

Georgia. She may be served with process at her residence which is not provided

due to her work status. She is sued in her individual capacity and is subject to the

jurisdiction of the Court. Upon information and belief, she had responsibilities

including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

60.

Defendant Samantha Scott (Defendant Scott), at the time of the events described in this Complaint, was working at the Fulton County Jail. She is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. She may be served with process at her residence which is not provided due to her work status. She is sued in her individual capacity and is subject to the jurisdiction of the Court. Upon information and belief, she had responsibilities including the intake and classification of Jeremiah Collier that took place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail.

61.

Defendant Demarcus Malik Arnold (Defendant Arnold), at the time of the murder of Shamar McLeroy on October 19, 2022, was working at the Fulton County Jail. Upon information and belief, Defendant Walker is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Walker may be served with process at his residence address which is not provided due to his work status. Defendant Walker is sued in his individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant

Walker held a responsibility of maintaining the physical safety and security of inmates including the decedent Shamar McLeroy.

62.

Defendant Dujuan Carlae Walker ("Defendant Walker"), at the time of the murder of Shamar McLeroy on October 19, 2022, was working at the Fulton County Jail. Upon information and belief, Defendant Walker is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Walker may be served with process at his residence address which is not provided due to his work status. Defendant Walker is sued in his individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Walker held a responsibility of maintaining the physical safety and security of inmates including the decedent Shamar McLeroy.

63.

Defendant Brook Breyshawn Hammond ("Defendant Hammond") at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Hammond is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Hammond may be served with process at his residence address which is not provided due to his work status. Defendant Hammond is sued in his individual

capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Hammond held a responsibility of maintaining the physical safety and security of inmates including the decedent Shamar McLeroy.

64.

Defendant Anthony N. Okonkwo ("Defendant Okonkwo") at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Okonkwo is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Okonkwo may be served with process at his residence address which is not provided due to his work status. Defendant Okonkwo is sued in his individual capacity and is subject to the jurisdiction of the Court. In this capacity, Defendant Okonkwo held a responsibility of maintaining the physical safety and security of inmates including the decedent Shamar McLeroy.

65.

Defendant Stephanie Robinson Cooper ("Defendant Cooper") at the time of the events described in this Complaint, was working at the Fulton County Jail. Upon information and belief, Defendant Cooper is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia. Defendant Cooper may be served with process at her residence address which is not provided due to her work status. Defendant Cooper is sued in her individual capacity and is subject

to the jurisdiction of the Court.  In this capacity, Defendant Cooper held a responsibility of maintaining the physical safety and security of inmates including the decedent Shamar McLeroy.

66.

Defendant Ann Holder ("Defendant Holder") at the time of the events described in this Complaint, was working at the Fulton County Jail.  Upon information and belief, Defendant Holder is a citizen and resident of the State of Georgia, residing in the Northern District of Georgia.  Defendant Holder may be served with process at her residence address which is not provided due to her work status.  Defendant Holder is sued in her individual capacity and is subject to the jurisdiction of the Court.  In this capacity, Defendant Holder held a responsibility of maintaining the physical safety and security of inmates including the decedent Shamar McLeroy.

67.

Defendant John Doe No. 1 is an individual whose identity and whereabouts are not currently known.  John Doe No. 1 is a person responsible for the intake of Jeremiah Collier at the Fulton County Jail on October 7, 2022 or October 8, 2022.

68.

Defendant John Doe No. 2 is an individual whose identity and whereabouts are not currently known.  John Doe No. 2 is a person responsible for the intake of Jeremiah Collier at the Fulton County Jail on October 7, 2022 or October 8, 2022.

69.

Defendant John Doe No. 3 is an individual whose identity and whereabouts are not currently known.  John Doe No. 3 is a person responsible for the classification of Jeremiah Collier at the Fulton County Jail on October 7, 2022 or October 8, 2022.

70.

Defendant John Doe No. 4 is an individual whose identity and whereabouts are not currently known.  John Doe No. 4 is a person responsible for the classification of Jeremiah Collier at the Fulton County Jail on October 7, 2022 or October 8, 2022.

71.

Defendant John Doe No. 5 is an individual whose identity and whereabouts are not currently known.  This individual was the jailer assigned to the cell where Shamar McLeroy was murdered on or about October 19, 2022.

72.

Defendant John Doe No. 6 is an individual whose identity and whereabouts are not currently known.  This individual was the jailer assigned to the cell where Shamar McLeroy was killed on or about October 19, 2022.

73.

At all times relevant herein, Defendants acted under color and authority of state law for purposes of the federal constitutional claims raised.

## **STATEMENT OF FACTS**

74.

On October 19, 2022, Shamar McLeroy was a pre-trial detainee at the Fulton County Jail.  On that date, he was murdered by his cellmate Jeremiah Collier who was a known murderer with mental health issues.

75.

On or about September 22, 2022, before the murder of Shamar McLeroy, Dino Walker was murdered by a cellmate at the Fulton County Jail.

76.

On or about June 21, 2022, before the murder of Shamar McLeroy, Anthony Jenkins was murdered by his cellmate at the Fulton County Jail.

77.

At the time of the October 19, 2022 murder of Shamar McLeroy, the Jail was overcrowded, understaffed, and dangerous.

78.

At the time of his murder on October 19, 2022, Shamar McLeroy was assigned to a floor with inmates experiencing severe and persistent mental illnesses.

79.

According to an Atlanta Journal Constitution investigation, more than 60 people who were held in the Fulton County Jail died between 2009 and October 2022, the highest total of any jail in Georgia during that time.

80.

According to the Fulton County Sheriff's Office, from January 2021 to December 2022, the rate of deaths at the Fulton County Jail quadrupled.

81.

The Jail's reputation as one of the most dangerous jails in the country has become so infamous that it prompted the United States Department of Justice ("DOJ") to launch an investigation into the Fulton County Jail.

82.

Summarizing the reasons for the DOJ investigation, Attorney General Merrick B. Garland stated, "We launched this investigation into the Fulton County Jail based on serious allegations of unsafe, unsanitary living conditions at the jail, excessive force and violence within the jail, discrimination against incarcerated individuals with mental health issues, and failure to provide adequate medical care to incarcerated individuals."

83.

The Department of Justice investigation was premised in part on the Civil Rights of Institutionalized Persons Act – a federal law that authorizes the Department of Justice to investigate state institutions, including county jails, to determine whether incarcerated people are subjected to a pattern or practice of constitutional violations.

84.

DOJ investigators have reported credible allegations that inmates of the jail are housed in a facility considered "structurally unsafe," and that correction

officers are using excessive force, and that inmate-on-inmate violence is

widespread, resulting in serious injuries and murders.  Ray Buchanan, United

States Attorney for the Northern District of Georgia, joined Attorney General

Garland, providing his view of the justification for the DOJ investigation, stating,

"The recent allegations of filthy housing teeming with insects, rampant violence

resulting in death and injuries, and officers using excessive force are cause for

grave concern and warranted an investigation."

85.

Condemning the Fulton County Jail, in particular, Assistant Attorney

General Kristen Clarke said, "The unconstitutional conditions that we see too often

inside jails and prisons have no place in society today." She added, "Our

investigation into these matters is guided by one core principle: People held in jails

and prisons do not surrender their constitutional and civil rights at the jail house

door."

86.

According to Clarke, 87% of the jail population in Fulton County is Black

and the vast majority have not been convicted.  These pre-trial detainees are

awaiting bail hearings, competency evaluations, and restoration services or are

detained because of their inability to post bond.

40

87.

Defendant Labat has publicly admitted that he lacks the resources to carry out his legally mandated responsibility to protect the constitutional rights of pre-trial detainees at the Fulton County Jail.

88.

Detective Alfred Hogan of the City of Atlanta Police Department concluded that the cause of the death of Shamar McLeroy was strangulation by his cellmate Jeremiah Collier.

89.

Detective Hogan of the City of Atlanta Police Department concluded that Shamar McLeroy's feet and hands were bound together so he could not have hurt himself.

90.

Detective Hogan of the City of Atlanta Police Department documented that Jeremiah Collier refused to make any statements.

91.

The Fulton County Medical Examiner concluded that the cause of death was asphyxia due to strangulation.

92.

The Fulton County Medical Examiner concluded that the manner of death was homicide.

## **COUNT ONE**

## **FULTON COUNTY**

93.

Shamar McLeroy, as a pre-trial detainee, was entitled to the protection of his constitutional rights under the Fourteenth Amendment, including protection from deliberate indifference by Defendant Fulton County to his safety and well-being.

94.

This private cause of action against Defendant Fulton County is based upon the U.S. Supreme Court's holding *Monell v. Dep't. of Social Services*, 436 U.S. 658, 691(1978), where the Court held that a state actor can be liable under 42 U.S.C. §1983, "When execution of a government's policy or custom is responsible for the alleged deprivation of civil rights."

95.

"In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice," *McDowell v. Brown*, 392 F3d 1283, 1290 (11th Cir. 2004).

96.

A policy is a statement or other decision "[o]fficially adopted and promulgated by government or its officers, while a custom receives no such formal approval through---official decision-making channels," _Monell_, 436 U.S. at 690-691.  A custom, rather, is "A practice that is so settled and permanent that it takes on the force of law," _McDowell v. Brown_, 392 F 3rd at 1290 (11th Cir. 2004).

97.

For purposes of _Monell_ liability, Fulton County Georgia is a state actor.

98.

To allege a viable _Monell_ claim the plaintiff must show (a) violation of a constitutional right; (b) that the governmental entity has a custom or policy that constitutes deliberate indifference to that constitutional right; and (c) that the policy or custom caused the violation.

99.

Though the Sheriff operates the Fulton County jail, Defendant Fulton County, through its Board of Commissioners, provides funding for the Jail's operations.

100.

Not only were Defendant Fulton County's Commissioners able to view the jail for themselves but, prior to the death of Shamar McLeroy, they were repeatedly presented with statistics (through both the Defendant Sheriff and the local media) concerning violence at the Jail, overcrowding at the Jail, understaffing at the Jail, the deplorable physical condition of the Jail, as well as the number of inmates who were murdered at the Jail.

101.

By not providing the requested funding, Defendant Fulton County virtually assured that the violence at the Jail would continue and that pre-trial detainees at the Jail would continue to be victimized by violence.

102.

In January 2021, Defendant Labat told the Fulton County Commission that without additional funding or space he would be unable to fulfill his constitutional obligations to care for and protect pre-trial detainees at the Jail.

103.

Defendant Fulton County, through its Commissioners, had known for years prior to Shamar McLeroy's death that the Jail was seriously overcrowded,

seriously understaffed, and dangerous, exposing pre-trial detainees like Shamar McLeroy to life-threatening conditions that they were powerless to remedy.

104.

Defendant Fulton County's budget decisions show that it had a persistent and widespread practice of underfunding the Fulton County Jail and, as a consequence, denying Shamar McLeroy's constitutional rights.

105.

Defendant Fulton County violated Shamar McLeroy's constitutional rights by not protecting his health and safety.

106.

Defendant Fulton County knew of, through its Board of Commissioners, and disregarded an excessive risk of serious harm to Shamar McLeroy.

107.

Defendant Fulton County, through its Board of Commissioners, was well aware of facts that demonstrated a substantial risk of serious harm in the Fulton County Jail for pre-trial detainees such as Shamar McLeroy.

108.

By the sheer number of inmate-on-inmate attacks, including murders, in the Fulton County Jail, combined with the violent atmosphere, overcrowding,

understaffing, and deplorable living conditions, Defendant Fulton County was aware that pre-trial detainees such as Shamar McLeroy faced a substantial risk of serious harm.

109.

In the context of budgeting decisions, a plaintiff must show that the constitutional violation complained of is a "highly predictable consequence" of the budgeting practice, _McDowell v. Brown_, 392 F 3rd at 1292.

110.

Plaintiff has alleged facts herein sufficiently to identify a pattern of injuries linked to the budgetary practices of Defendant Fulton County.

111.

By not providing funding it knew to be critical to the safety and well-being of Fulton County pre-trial detainees, Defendant Fulton County, through its Board of Commissioners, acted with deliberate indifference to the constitutional rights of pre-trial detainees like Shamar McLeroy to have their physical health and well-being protected.

112.

The funding decisions Defendant Fulton County made directly allowed conditions to continue to exist (overcrowding, understaffing, deplorably unsanitary conditions) that have resulted in injury and murder.

113.

As stated, pre-trial detainees have been murdered prior to the October 19, 2022 murder of Shamar McLeroy.

114.

The chronic unsanitary conditions, chronic overcrowding, and chronic understaffing has coalesced to make the Fulton County jail one of the most dangerous jails in the nation for pre-trial detainees.

115.

From the above allegations, the Court can reasonably infer a pattern of constitutional violations demonstrating Defendant Fulton County's policy or custom of failing to provide for the safety and well-being of detainees by virtue of the underfunding and understaffing of the Fulton County Jail, constituting deliberate indifference to constitutional rights of pre-trial detainees such as Shamar McLeroy.  Defendant Fulton County's widespread and sustained practice of failing to adequately fund jail operations directly caused or contributed to Shamar McLeroy's death.

116.

Defendant Fulton County's deliberate indifference to adequately fund Jail operations directly lead to the Jail's widespread inability to:

a. Provide for the safety and well-being of pre-trial detainees such as Shamar McLeroy;

b. Provide a sanitary environment for pre-trial detainees the lack of which, according to the Department of Justice, contributes to jail violence;

c. Provide for adequate space to prevent overcrowding the lack of which contributes to jail violence;

d. Provide for adequate staffing of the jail, the lack of which contributes to jail violence.

117.

As a result of Defendant Fulton County's actions and inactions, plaintiff James McLeroy is entitled to damages for the full value of the life of the decedent Shamar McLeroy. In addition, Rosie Gray as temporary administrator of the estate of Shamar McLeroy is entitled to damages for the pain and suffering experienced by Shamar McLeroy as well as recovery for the funeral, medical, and other necessary expenses resulting from the injury and death of Shamar McLeroy.

## COUNT TWO
## DEFENDANT NAPHCARE, INC.

118.

Certain individuals that were working at the Fulton County Jail, that had responsibilities including the intake and classification of Jeremiah Collier that took

place on or about October 7, 2022 or October 8, 2022 at the Fulton County Jail,

were employees of NaphCare, Inc.

The subject employees include, but may not be limited to, Earl Delk,

Rosemary O. Morris-Heckstall, Olubukola Funmi Olatoto, Jannet Maureen Morais,

Samantha Scott, and others.

119.

The aforementioned individuals were acting in the course and scope of their

employment with NaphCare at the time of the events given rise to this suit.

120.

At all times relevant, Defendant NaphCare was liable for the actions of the

aforementioned individuals under the doctrine of respondeat superior.

**COUNT THREE**
**DEFENDANT PATRICK LABAT**

121.

According to the website of the Sheriff of Fulton County, one of the

Sheriff's responsibilities is Chief Detention Officer.  The Sheriff's role in this

regard is described as follows: "The Sheriff is the official jailer of the county and is

responsible for the health, safety, and welfare of all inmates."

122.

Since becoming Sheriff in January 2021, Defendant Labat has made numerous efforts to persuade Defendant Fulton County to increase its funding to the Sheriff's Office to alleviate serious overcrowding, and to clean up the deplorably unsanitary physical condition of the Jail.

123.

This lack of funding, Defendant Labat asserted, to the Fulton County Commission in January 2021, prevented him from performing his constitutional duty to protect the safety and well-being of inmates under his charge.

124.

Defendant Labat took office as the elected Sheriff of Fulton County, Georgia on January 1, 2021.

125.

Defendant Labat has, over a period of years, repeatedly decried the lack of Fulton County allocated funds for urgent jail priorities such as inmate security, staffing, etc.

126.

According to Defendant Labat, in practice, there is typically one officer in the control room and one officer moving through the housing zones with nearly two hundred (200) detainees, that is, a 100:1 inmate to guard ratio.

127.

The presence of at least one additional uniformed staff member at the Fulton County Jail, on the cell block unoccupied by uniformed staff at the time of the strangulation of Shamar McLeroy on October 19, 2022,  would have prevented the murder of Shamar McLeroy.

128.

Defendant Labat was aware that pre-trial detainees in the Fulton County Jail, including Shamar McLeroy, were incarcerated under conditions posing a substantial risk of serious harm to them.

129.

Defendant Labat was aware of the fact that detainees at the Fulton County Jail lived under conditions that could subject them to a substantial risk of serious harm, including violence by other detainees.

130.

Defendant Labat was deliberately indifferent to the substantial risk of serious harm that Shamar McLeroy faced at the Fulton County Jail.

131.

Defendant Labat's deliberate indifference was the proximate cause of the death of Shamar McLeroy.

132.

The actions of Defendant Sheriff Labat, as described above, contravened clearly established law that a reasonable jail official should have known.

133.

Because of Defendant Labat's deliberate indifference, Shamar McLeroy was murdered.

134.

Plaintiff James McLeroy is entitled to damages for the full value of life of the decedent.  In addition, Rosie Gray as temporary administrator of the estate of Shamar McLeroy is entitled to damages for the pain and suffering experienced by Shamar McLeroy as well as the funeral, medical, and other necessary expenses resulting from the death of Shamar McLeroy.

135.

Defendant Sheriff Labat's supervisory failure, including his failure to adequately supervise the other individual Defendants, created a causal connection to the fatal attack on Shamar McLeroy.

136.

Defendant Labat was well aware of the severe understaffing at the Fulton County Jail.

137.

Defendant Sheriff Labat was well aware of the history of widespread inmate on inmate abuse and violence at the Fulton County Jail, including the specific floor where Shamar McLeroy was housed.

138.

The serious overcrowding of the jail, coupled with the serious understaffing of the jail, were known contributors to inmate on inmate abuse and violence but were left unaddressed by Defendant Labat.

139.

Defendant Labat's deficiencies in supervision encompass the inadequate handling of substantial overcrowding as well as critical understaffing.

140.

Defendant Labat's failure to act constitutes deliberate indifference to Shamar McLeroy's safety and well-being.

141.

By not providing for the proper presence of detention officers in compliance with Fulton County policies and procedures including, but not limited to, FCSO Jail Operations Post Order Number 24 (08/31/2022), §4 (B)(3), Defendant Labat personally participated in the violation of Shamar McLeroy's constitutional rights. Pursuant to this policy and procedure, among the responsibilities of a detention officer during his or her shift is to "conduct a personal visual well-being check of all inmates at least every 30 minutes (every 15 minutes for special classification inmates)." FCSO Jail Operations Post Order number 24 (08/31/2022), §4(B)(3).

142.

The causal connection for Defendant Labat's supervisory liability exists because of a history of critical understaffing, as well as a history of widespread violence including prior murders, that would have put Defendant Labat on notice of the need to correct the constitutional violations, namely the failure to protect the pre-trial detainee's health and safety.

143.

Defendant Labat's supervisory liability is the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FOUR
## DEFENDANT BRANDON THOMPSON

143.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

144.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

145.

Upon information and belief, Defendant Thompson was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

146.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

147.

Defendant Thompson has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

148.

Due to Defendant Thompson's negligent performance of ministerial duties, he has violated Georgia law and proximately caused the death of Shamar McLeroy.

149.

Defendant Thompson's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

150.

Defendant Thompson's  violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIVE
## DEFENDANT CATHERINE HARRELL

151.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

152.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

153.

Upon information and belief, Defendant Harrell was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

154.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

155.

Defendant Harrell has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

156.

Due to Defendant Harell's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

157.

Defendant Harrell's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

158.

Defendant Harrell's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT SIX
## DEFENDANT EARL DELK

159.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

160.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

161.

Upon information and belief, Defendant Delk was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

162.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

163.

Defendant Delk has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

164.

Due to Defendant Delk's negligent performance of ministerial duties, he has violated Georgia law and proximately caused the death of Shamar McLeroy.

165.

Defendant Delk's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

166.

Defendant Delk's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT SEVEN
## DEFENDANT FATISHA JACKSON

### 167.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

### 168.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

### 169.

Upon information and belief, Defendant Jackson was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

### 170.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

### 171.

Defendant Jackson has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

172.

Due to Defendant Jackson's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

173.

Defendant Jackson's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

174.

Defendant Jackson's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT EIGHT
## DEFENDANT JANESE ATLOW

175.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

176.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

177.

Upon information and belief, Defendant Atlow was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

178.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

179.

Defendant Atlow has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

180.

Due to Defendant Atlow's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

181.

Defendant Atlow's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

182.

Defendant Atlow's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT NINE
## DEFENDANT JERRICA WHITE

### 183.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

### 184.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

### 185.

Upon information and belief, Defendant White was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

### 186.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

### 187.

Defendant White has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

188.

Due to Defendant White's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

189.

Defendant White's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

190.

Defendant White's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TEN
## DEFENDANT JOAN TAPPER

191.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

192.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

193.

Upon information and belief, Defendant Tapper was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

194.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

195.

Defendant Tapper has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

196.

Due to Defendant Tapper's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

197.

Defendant Tapper's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

198.

Defendant Tapper's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT ELEVEN
## DEFENDANT KA-JANA WILLIAMS

199.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

200.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

201.

Upon information and belief, Defendant Williams was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

202.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

203.

Defendant Williams has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

204.

Due to Defendant Williams's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

205.

Defendant Williams's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

206.

Defendant Williams's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWELVE
## DEFENDANT KAREENA CALHOUN

207.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

208.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

209.

Upon information and belief, Defendant Calhoun was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

210.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

211.

Defendant Calhoun has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

212.

Due to Defendant Calhoun's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

213.

Defendant Calhoun's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

214.

Defendant Calhoun's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTEEN
## DEFENDANT KIMBREYA OTLEY

### 215.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

### 216.

The intake and classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

### 217.

Upon information and belief, Defendant Otley was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

### 218.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

### 219.

Defendant Otley has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

220.

Due to Defendant Otley's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

221.

Defendant Otley's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

222.

Defendant Otley's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FOURTEEN
## DEFENDANT LECRETIA PENN

223.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

224.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

225.

Upon information and belief, Defendant Penn was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

226.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

227.

Defendant Penn has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

228.

Due to Defendant Penn's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

229.

Defendant Penn's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

230.

Defendant Penn's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTEEN
## DEFENDANT MAKISHA ADAMS

231.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

232.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

233.

Upon information and belief, Defendant Adams was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

234.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

235.

Defendant Adams has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

236.

Due to Defendant Adams's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

237.

Defendant Adams's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

238.

Defendant Adams's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT SIXTEEN
## DEFENDANT MANDI MPEZO

239.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

240.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

241.

Upon information and belief, Defendant Mpezo was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

242.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

243.

Defendant Mpezo has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

244.

Due to Defendant Mpezo's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

245.

Defendant Mpezo's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

246.

Defendant Mpezo's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT SEVENTEEN
## DEFENDANT MAYA MOORE

247.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

248.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

249.

Upon information and belief, Defendant Moore was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

250.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

251.

Defendant Moore has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

252.

Due to Defendant Moore's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

253.

Defendant Moore's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

254.

Defendant Moore's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT EIGHTEEN
## DEFENDANT MELISSA MATHEWS

255.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

256.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

257.

Upon information and belief, Defendant Mathews was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

258.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

259.

Defendant Mathews has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

260.

Due to Defendant Mathews's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

261.

Defendant Mathews's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

262.

Defendant Mathews's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT NINETEEN
## DEFENDANT NATASHA STROUD

263.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

264.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

265.

Upon information and belief, Defendant Stroud was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

266.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

267.

Defendant Stroud has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

268.

Due to Defendant Stroud's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

269.

Defendant Stroud's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

270.

Defendant Stroud's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY
## DEFENDANT SAMANTHA SCOTT

271.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

272.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

273.

Upon information and belief, Defendant Scott was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

274.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

275.

Defendant Scott has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

276.

Due to Defendant Scott's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

277.

Defendant Scott's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

278.

Defendant Scott's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-ONE
## DEFENDANT SANDRA KWARTENG

279.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

280.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

281.

Upon information and belief, Defendant Kwarteng was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

282.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

283.

Defendant Kwarteng has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

284.

Due to Defendant Kwarteng's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

285.

Defendant Kwarteng's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

286.

Defendant Kwarteng's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-TWO
## DEFENDANT SHERRIE KEYES

287.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

288.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

289.

Upon information and belief, Defendant Keyes was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

290.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

291.

Defendant Keyes has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

292.

Due to Defendant Keyes's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

293.

Defendant Keyes's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

294.

Defendant Keyes's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-THREE
## DEFENDANT STANLEY HIMES

295.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

296.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

297.

Upon information and belief, Defendant Himes was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

298.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

299.

Defendant Himes has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

300.

Due to Defendant Himes's negligent performance of ministerial duties, he has violated Georgia law and proximately caused the death of Shamar McLeroy.

301.

Defendant Himes's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

302.

Defendant Himes's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-FOUR
## DEFENDANT TIFFANY HAIRSTON

### 303.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

### 304.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

### 305.

Upon information and belief, Defendant Hairston was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

### 306.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

### 307.

Defendant Hairston has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

308.

Due to Defendant Hairston's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

309.

Defendant Hairston's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

310.

Defendant Hairston's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-FIVE
## DEFENDANT ALLEN VAVAL

311.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

312.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

313.

Upon information and belief, Defendant Vaval was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

314.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

315.

Defendant Vaval has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

316.

Due to Defendant Vaval's negligent performance of ministerial duties, he has violated Georgia law and proximately caused the death of Shamar McLeroy.

317.

Defendant Vaval's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

318.

Defendant Vaval's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-SIX
## DEFENDANT AQUILLA WHITFIELD

319.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

320.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

321.

Upon information and belief, Defendant Whitfield was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

322.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

323.

Defendant Whitfield has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

Case 1:24-cv-04731-VMC    Document 1    Filed 10/17/24    Page 90 of 151

324.

Due to Defendant Whitfield's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

325.

Defendant Whitfield's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

326.

Defendant Whitfield's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

**COUNT TWENTY-SEVEN**
**DEFENDANT ARLETHIA PRYOR**

327.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

328.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

90

329.

Upon information and belief, Defendant Pryor was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

330.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

331.

Defendant Pryor has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

332.

Due to Defendant Pryor's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

333.

Defendant Pryor's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

334.

Defendant Pryor's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-EIGHT
## DEFENDANT BERONICA PHILPOT

335.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

336.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

337.

Upon information and belief, Defendant Philpot was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

338.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

339.

Defendant Philpot has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

340.

Due to Defendant Philpot's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

341.

Defendant Philpot's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

342.

Defendant Philpot's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT TWENTY-NINE
## DEFENDANT BISAKHA ROY

343.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

344.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

345.

Upon information and belief, Defendant Roy was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

346.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

347.

Defendant Roy has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

348.

Due to Defendant Roy's negligent performance of ministerial duties, Defendant Roy has violated Georgia law and proximately caused the death of Shamar McLeroy.

349.

Defendant Roy's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

350.

Defendant Roy's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY
## DEFENDANT CHAQUETTA CORBIN

351.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

352.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

353.

Upon information and belief, Defendant Corbin was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

354.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

355.

Defendant Corbin has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

356.

Due to Defendant Corbin's negligent performance of ministerial duties, Defendant Corbin has violated Georgia law and proximately caused the death of Shamar McLeroy.

357.

Defendant Corbin's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

358.

Defendant Corbin's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-ONE
## DEFENDANT CHRISTOPHER PHILBERT

359.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

360.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County

Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

361.

Upon information and belief, Defendant Philbert was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

362.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

363.

Defendant Philbert has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

364.

Due to Defendant Philbert's negligent performance of ministerial duties, Defendant Philbert has violated Georgia law and proximately caused the death of Shamar McLeroy.

365.

Defendant Philbert's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

366.

Defendant Philbert's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

**COUNT THIRTY-TWO**
**DEFENDANT COURTNEY NEMARD**

367.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

368.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

369.

Upon information and belief, Defendant Nemard was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

370.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

371.

Defendant Nemard has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

372.

Due to Defendant Nemard's negligent performance of ministerial duties, Defendant Nemard has violated Georgia law and proximately caused the death of Shamar McLeroy.

373.

Defendant Nemard's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

374.

Defendant Nemard's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-THREE
## DEFENDANT DEMARCUS HARRIS

375.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

376.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County

Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

## 377.

Upon information and belief, Defendant Harris was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

## 378.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

## 379.

Defendant Harris has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

## 380.

Due to Defendant Harris's negligent performance of ministerial duties, Defendant Harris has violated Georgia law and proximately caused the death of Shamar McLeroy.

## 381.

Defendant Harris's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

382.

Defendant Harris's violation of the Fourteenth Amendment was the

proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-FOUR
## DEFENDANT FELANDRIAS GASTON

383.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was

processed through intake and classification at the Fulton County Jail.

384.

The intake and classification of inmates such as Jeremiah Collier are

governed by policies and procedures including, but not limited to, Fulton County

Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11,

400-10, 400-09, etc.

385.

Upon information and belief, Defendant Gaston was not compliant with

ministerial duties at the time of the intake and classification of Jeremiah Collier

including, but not limited to, the aforementioned policies and procedures.

386.

Shamar McLeroy would have lived had the mandated ministerial duties been

performed.

387.

Defendant Gaston has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

388.

Due to Defendant Gaston's negligent performance of ministerial duties, Defendant Gaston has violated Georgia law and proximately caused the death of Shamar McLeroy.

389.

Defendant Gaston's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

390.

Defendant Gaston's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-FIVE
## DEFENDANT FREDERICK CALLAWAY

391.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

392.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

393.

Upon information and belief, Defendant Callaway was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

394.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

395.

Defendant Callaway has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

396.

Due to Defendant Callaway's negligent performance of ministerial duties, Defendant Callaway has violated Georgia law and proximately caused the death of Shamar McLeroy.

397.

Defendant Callaway's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

398.

Defendant Callaway's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-SIX
## DEFENDANT JAMARCUS WILLIAMS

399.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

400.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

401.

Upon information and belief, Defendant Williams was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

402.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

403.

Defendant Williams has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

404.

Due to Defendant Williams's negligent performance of ministerial duties, Defendant Williams has violated Georgia law and proximately caused the death of Shamar McLeroy.

405.

Defendant Williams's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

406.

Defendant Williams's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-SEVEN
## DEFENDANT KAWANA JENKINS

### 407.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

### 408.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

### 409.

Upon information and belief, Defendant Jenkins was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

### 410.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

### 411.

Defendant Jenkins has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

412.

Due to Defendant Jenkins's negligent performance of ministerial duties, Defendant Jenkins has violated Georgia law and proximately caused the death of Shamar McLeroy.

413.

Defendant Jenkins's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

414.

Defendant Jenkins's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-EIGHT
## DEFENDANT KEVIN WALTER MARTIN

415.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

416.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

417.

Upon information and belief, Defendant Martin was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

418.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

419.

Defendant Martin has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial duties.

420.

Due to Defendant Martin's negligent performance of his ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

421.

Defendant Martin's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

422.

Defendant Martin's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT THIRTY-NINE
## DEFENDANT KIMBERLY JAMES

### 423.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

### 424.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

### 425.

Upon information and belief, Defendant James was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

### 426.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

### 427.

Defendant James has waived official immunity afforded to individual public employees because of the negligent performance of her ministerial duties.

428.

Due to Defendant James's negligent performance of her ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

429.

Defendant James's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

430.

Defendant James's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY
## DEFENDANT KUBAZA HAWTHORNE

431.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

432.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

433.

Upon information and belief, Defendant Hawthorne was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

434.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

435.

Defendant Hawthorne has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

436.

Due to Defendant Hawthorne's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

437.

Defendant Hawthorne's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

438.

Defendant Hawthorne's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY-ONE
## DEFENDANT LADAIN MCDOWELL

439.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

440.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

441.

Upon information and belief, Defendant McDowell was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

442.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

443.

Defendant McDowell has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

444.

Due to Defendant McDowell's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

445.

Defendant McDowell's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

446.

Defendant McDowell's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY-TWO
## DEFENDANT MARCUS PRESBURY-LOMAX

447.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

448.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

449.

Upon information and belief, Defendant Presbury-Lomax was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

450.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

451.

Defendant Presbury-Lomax has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

452.

Due to Defendant Presbury-Lomax's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

453.

Defendant Presbury-Lomax's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment and was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death,

## COUNT FORTY-THREE
## DEFENDANT RENEKA C. BARNES

454.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

455.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

456.

Upon information and belief, Defendant Barnes was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

457.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

458.

Defendant Barnes has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

459.

Due to Defendant Barnes's negligent performance of ministerial duties, she has violated Georgia law and proximately caused the death of Shamar McLeroy.

460.

Defendant Barnes's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

461.

Defendant Barnes's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY-FOUR
## DEFENDANT SHAQUILLA SAVOY

462.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

463.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

464.

Upon information and belief, Defendant Savoy was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

465.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

466.

Defendant Savoy has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

467.

Due to Defendant Savoy's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

468.

Defendant Savoy's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

469.

Defendant Savoy's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY-FIVE
## DEFENDANT APFOLIO ERON HARVEY JR.

470.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was

processed through intake and classification at the Fulton County Jail.

471.

The intake and classification of inmates such as Jeremiah Collier are

governed by policies and procedures including, but not limited to, Fulton County

Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11,

400-10, 400-09, etc.

472.

Upon information and belief, Defendant Harvey was not compliant with

ministerial duties at the time of the intake and classification of Jeremiah Collier

including, but not limited to, the aforementioned policies and procedures.

473.

Shamar McLeroy would have lived had the mandated ministerial duties been

performed.

474.

Defendant Harvey has waived official immunity afforded to individual

public employees because of the negligent performance of ministerial duties.

475.

Due to Defendant Harvey's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

476.

Defendant Harvey's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

477.

Defendant Harvey's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

**COUNT FORTY-SIX**
**DEFENDANT JAMILLA NICOLE SAADIQ**

478.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

479.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

480.

Upon information and belief, Defendant Saadiq was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

481.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

482.

Defendant Saadiq has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

483.

Due to Defendant Saadiq's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

484.

Defendant Saadiq's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

485.

Defendant Saadiq's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY-SEVEN
## DEFENDANT JOSEPH ROBERT LOVEJOY JR.

486.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

487.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

488.

Upon information and belief, Defendant Lovejoy was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

489.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

490.

Defendant Lovejoy has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

491.

Due to Defendant Lovejoy's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

492.

Defendant Lovejoy's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

493.

Defendant Lovejoy's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY-EIGHT
## DEFENDANT ROSEMARY O. MORRIS-HECKSTALL

494.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

495.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

496.

Upon information and belief, Defendant Morris-Heckstall was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

497.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

498.

Defendant Morris-Heckstall has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

499.

Due to Defendant Morris-Heckstall's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

500.

Defendant Morris-Heckstall's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

501.

Defendant Morris-Heckstall's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FORTY-NINE
## DEFENDANT OLUBUKOLA FUNMI OLATOTO

502.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

503.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

504.

Upon information and belief, Defendant Olatoto was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

505.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

506.

Defendant Olatoto has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

507.

Due to Defendant Olatoto's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

508.

Defendant Olatoto's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

509.

Defendant Olatoto's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY
## DEFENDANT JANNET MAUREEN MORAIS

510.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

511.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

512.

Upon information and belief, Defendant Morais was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

513.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

514.

Defendant Morais has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

515.

Due to Defendant Morais's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

516.

Defendant Morais's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

517.

Defendant Morais's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY-ONE
## DEFENDANT SAMANTHA SCOTT

518.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake and classification at the Fulton County Jail.

519.

The intake and classification of inmates such as Jeremiah Collier are governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

520.

Upon information and belief, Defendant Scott was not compliant with ministerial duties at the time of the intake and classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

521.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

522.

Defendant Scott has waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

523.

Due to Defendant Scott's negligent performance of ministerial duties, Defendant has violated Georgia law and proximately caused the death of Shamar McLeroy.

524.

Defendant Scott's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

525.

Defendant Scott's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY-TWO
## DEFENDANT DEMARCUS MALIK ARNOLD

### 526.

On October 19, 2022, Shamar McLeroy was assigned to cell 515 located on the 5th Floor of the north wing (Five North) where inmates experiencing severe and persistent mental illness were housed.

### 527.

At the time of the death of Shamar McLeroy on October 19, 2022, Defendant Arnold was assigned to Five North.

### 528.

Pursuant to Fulton County Sheriff's Office Jail Operations Post Order, among the responsibilities of a detention officer during his or her shift is to "conduct a personal visual well-being check of all inmates at least every 30 minutes (every 15 minutes for special classification inmates)." FCSO Jail Operations Post Order number 24 (08/31/2022), §4 (B)(3).

### 529.

Upon information and belief, Defendant Arnold was not compliant with this policy prior to the murder of Shamar McLeroy.

530.

The inmate who fatally strangled Shamar McLeroy was Jeremiah Collier who was a known murderer.

531.

Defendant Arnold breached ministerial duties by failing to perform the required well-being checks.

532.

Defendant Arnold's absence from his post at the time of the murder of Shamar McLeroy occurred with his full knowledge that the risk of being harmed or killed facing inmates in Five North was higher than in other areas of the Jail.

533.

Shamar McLeroy would have lived had Defendant Arnold performed ministerial duties.

534.

Defendant Arnold has waived official immunity afforded to individual public employees because of the negligent performance of ministerial acts.

535.

Due to Defendant Arnold's negligent performance of ministerial acts, he has violated Georgia law.

536.

Defendant Arnold's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

537.

Defendant Arnold's conduct was a direct and proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

**COUNT FIFTY-THREE**
**DEFENDANT DUJUAN CARLAE WALKER**

538.

On October 19, 2022, Shamar McLeroy was assigned to cell 515 located on the 5th Floor of the north wing (Five North) where inmates experiencing severe and persistent mental illness were housed.

539.

At the time of the death of Shamar McLeroy on October 19, 2022, Defendant Walker was assigned to Five North.

540.

Pursuant to Fulton County Sheriff's Office Jail Operations Post Order, among the responsibilities of a detention officer during his or her shift is to "conduct a personal visual well-being check of all inmates at least every 30

minutes (every 15 minutes for special classification inmates)." FCSO Jail

Operations Post Order number 24 (08/31/2022), §4 (B)(3).

541.

Upon information and belief, Defendant Walker was not compliant with this

policy prior to the murder of Shamar McLeroy.

542.

The inmate who fatally strangled Shamar McLeroy was Jeremiah Collier

who was a known murderer.

543.

Defendant Walker breached ministerial duties by failing to perform the

required well-being checks.

544.

Defendant Walker's absence from his post at the time of the  murder of

Shamar McLeroy occurred with his full knowledge that the risk of being harmed or

killed facing inmates in Five North was higher than in other areas of the Jail.

545.

Shamar McLeroy would have lived had Defendant Walker performed

ministerial duties.

546.

Defendant Walker has waived official immunity afforded to individual public employees because of the negligent performance of ministerial acts.

547.

Due to Defendant Walker's negligent performance of ministerial acts, he has violated Georgia law.

548.

Defendant Walker's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

549.

Defendant Walker's conduct was a direct and proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY-FOUR
## DEFENDANT BROOK BREYSHAWN HAMMOND

550.

On October 19, 2022, Shamar McLeroy was assigned to cell 515 located on the 5th Floor of the north wing (Five North) where inmates experiencing severe and persistent mental illness were housed.

551.

At the time of the death of Shamar McLeroy on October 19, 2022, Defendant Hammond was assigned to Five North.

552.

Pursuant to Fulton County Sheriff's Office Jail Operations Post Order, among the responsibilities of a detention officer during his or her shift is to "conduct a personal visual well-being check of all inmates at least every 30 minutes (every 15 minutes for special classification inmates)." FCSO Jail Operations Post Order number 24 (08/31/2022), §4 (B)(3).

553.

Upon information and belief, Defendant Hammond was not compliant with this policy prior to the murder of Shamar McLeroy.

554.

The inmate who fatally strangled Shamar McLeroy was Jeremiah Collier who was a known murderer.

555.

Defendant Hammond breached ministerial duties by failing to perform the required well-being checks.

556.

Defendant Hammond's absence from his post at the time of the murder of Shamar McLeroy occurred with his full knowledge that the risk of being harmed or killed facing inmates in Five North was higher than in other areas of the Jail.

557.

Shamar McLeroy would have lived had Defendant Hammond performed ministerial duties.

558.

Defendant Hammond has waived official immunity afforded to individual public employees because of the negligent performance of his ministerial acts.

559.

Due to Defendant Hammond's negligent performance of ministerial acts, he has violated Georgia law.

560.

Defendant Hammond's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

561.

Defendant Hammond's conduct was a direct and proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY-FIVE
## DEFENDANT ANTHONY N. OKONKWO

### 562.

On October 19, 2022, Shamar McLeroy was assigned to cell 515 located on the 5th Floor of the north wing (Five North) where inmates experiencing severe and persistent mental illness were housed.

### 563.

At the time of the death of Shamar McLeroy on October 19, 2022, Defendant Okonkwu was assigned to Five North.

### 564.

Pursuant to Fulton County Sheriff's Office Jail Operations Post Order, among the responsibilities of a detention officer during his or her shift is to "conduct a personal visual well-being check of all inmates at least every 30 minutes (every 15 minutes for special classification inmates)."  FCSO Jail Operations Post Order number 24 (08/31/2022), §4 (B)(3).

### 565.

Upon information and belief, Defendant Okonkwo was not compliant with this policy prior to the murder of Shamar McLeroy.

566.

The inmate who fatally strangled Shamar McLeroy was Jeremiah Collier who was a known murderer.

567.

Defendant Okonkwo breached ministerial duties by failing to perform the required well-being checks.

568.

Defendant Okonkwo's absence from his post at the time of the murder of Shamar McLeroy occurred with his full knowledge that the risk of being harmed or killed facing inmates in Five North was higher than in other areas of the Jail.

569.

Shamar McLeroy would have lived had Defendant Okonkwo performed ministerial duties.

570.

Defendant Okonkwo has waived official immunity afforded to individual public employees because of the negligent performance of ministerial acts.

571.

Due to Defendant Okonkwo's negligent performance of ministerial acts, he has violated Georgia law.

572.

Defendant Okonkwo's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

573.

Defendant Okonkwo's conduct was a direct and proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

**COUNT FIFTY-SIX**
**DEFENDANT STEPHANIE ROBINSON COOPER**

574.

On October 19, 2022, Shamar McLeroy was assigned to cell 515 located on the 5th Floor of the north wing (Five North) where inmates experiencing severe and persistent mental illness were housed.

575.

At the time of the death of Shamar McLeroy on October 19, 2022, Defendant Cooper was assigned to Five North.

576.

Pursuant to Fulton County Sheriff's Office Jail Operations Post Order, among the responsibilities of a detention officer during his or her shift is to

"conduct a personal visual well-being check of all inmates at least every 30 minutes (every 15 minutes for special classification inmates)." FCSO Jail Operations Post Order number 24 (08/31/2022), §4 (B)(3).

577.

Upon information and belief, Defendant Cooper was not compliant with this policy prior to the murder of Shamar McLeroy.

578.

The inmate who fatally strangled Shamar McLeroy was Jeremiah Collier who was a known murderer.

579.

Defendant Cooper breached ministerial duties by failing to perform the required well-being checks.

580.

Defendant Cooper's absence from her post at the time of the murder of Shamar McLeroy occurred with her full knowledge that the risk of being harmed or killed facing inmates in Five North was higher than in other areas of the Jail.

581.

Shamar McLeroy would have lived had Defendant Cooper performed ministerial duties.

582.

Defendant Cooper has waived official immunity afforded to individual public employees because of the negligent performance of ministerial acts.

583.

Due to Defendant Cooper's negligent performance of ministerial acts, she has violated Georgia law.

584.

Defendant Cooper's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

585.

Defendant Cooper's conduct was a direct and proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY-SEVEN

## DEFENDANT ANN HOLDER

586.

On October 19, 2022, Shamar McLeroy was assigned to cell 515 located on the 5th Floor of the north wing (Five North) where inmates experiencing severe and persistent mental illness were housed.

140

587.

At the time of the death of Shamar McLeroy on October 19, 2022, Defendant Hammond was assigned to Five North.

588.

Pursuant to Fulton County Sheriff's Office Jail Operations Post Order, among the responsibilities of a detention officer during his or her shift is to "conduct a personal visual well-being check of all inmates at least every 30 minutes (every 15 minutes for special classification inmates)."  FCSO Jail Operations Post Order number 24 (08/31/2022), §4 (B)(3).

589.

Upon information and belief, Defendant Holder was not compliant with this policy prior to the murder of Shamar McLeroy.

590.

The inmate who fatally strangled Shamar McLeroy was Jeremiah Collier who was a known murderer.

591.

Defendant Holder breached ministerial duties by failing to perform the required well-being checks.

592.

Defendant Holder's absence from her post at the time of the murder of Shamar McLeroy occurred with her full knowledge that the risk of being harmed or killed facing inmates in Five North was higher than in other areas of the Jail.

593.

Shamar McLeroy would have lived had Defendant Holder performed ministerial duties.

594.

Defendant Holder has waived official immunity afforded to individual public employees because of the negligent performance of ministerial acts.

595.

Due to Defendant Holder's negligent performance of ministerial acts, she has violated Georgia law.

596.

Defendant Holder's deliberate indifference to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

597.

Defendant Holder's conduct was a direct and proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY-EIGHT
## DEFENDANTS JOHN DOE NO. 1 AND JOHN DOE NO. 2

598.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through intake at the Fulton County Jail.

599.

The intake of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

600.

Upon information and belief, Defendants John Doe No. 1 and John Doe No. 2 were not compliant with ministerial duties at the time of the intake of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

601.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

602.

Defendants John Doe No. 1 and John Doe No. 2 waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

603.

Due to the negligent performance of ministerial duties by Defendants John Doe No. 1 and John Doe No. 2, they have violated Georgia law and proximately caused the death of Shamar McLeroy.

604.

The deliberate indifference of Defendants John Doe No. 1 and John Doe No. 2 to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

605.

John Doe No. 1 and John Doe No. 2's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT FIFTY-NINE
## DEFENDANTS JOHN DOE NO. 3 AND JOHN DOE NO. 4

606.

On or about October 7, 2022 and October 8, 2022, Jeremiah Collier was processed through classification at the Fulton County Jail.

607.

The classification of inmates such as Jeremiah Collier is governed by policies and procedures including, but not limited to, Fulton County Sheriff's Office Jail Operations Standard Operating Procedures, Numbers 400-11, 400-10, 400-09, etc.

608.

Upon information and belief, Defendants John Doe No. 3 and John Doe No. 4 were not compliant with ministerial duties at the time of the classification of Jeremiah Collier including, but not limited to, the aforementioned policies and procedures.

609.

Shamar McLeroy would have lived had the mandated ministerial duties been performed.

610.

Defendants John Doe No. 3 and John Doe No. 4 waived official immunity afforded to individual public employees because of the negligent performance of ministerial duties.

611.

Due to the negligent performance of ministerial duties by Defendants John Doe No. 3 and John Doe No. 4, they have violated Georgia law and proximately caused the death of Shamar McLeroy.

612.

The deliberate indifference of Defendants John Doe No. 3 and John Doe No. 4 to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

613.

John Doe No. 3 and John Doe No. 4's violation of the Fourteenth Amendment was the proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## COUNT SIXTY
## DEFENDANTS JOHN DOE NO. 5 AND JOHN DOE NO. 6

614.

On October 19, 2022, Shamar McLeroy was assigned to cell 515 located on the 5th Floor of the north wing (Five North) where inmates experiencing severe and persistent mental illness were housed.

615.

At the time of the death of Shamar McLeroy on October 19, 2022,

Defendants John Doe No. 5 and John Doe No. 6 were assigned to Five North.

616.

Pursuant to Fulton County Sheriff's Office Jail Operations Post Order,

among the responsibilities of a detention officer during his or her shift is to

"conduct a personal visual well-being check of all inmates at least every 30

minutes (every 15 minutes for special classification inmates)." FCSO Jail

Operations Post Order number 24 (08/31/2022), §4 (B)(3).

617.

Upon information and belief, Defendants John Doe No. 5 and John Doe No.

6 were not compliant with this policy prior to the murder of Shamar McLeroy.

618.

The inmate who fatally strangled Shamar McLeroy was Jeremiah Collier

who was a known murderer.

619.

John Doe No. 5 and John Doe No. 6 breached ministerial duties by failing to

perform the required well-being checks.

620.

The absence of John Doe No. 5 and John Doe No. 6 from their posts at the time of the murder of Shamar McLeroy occurred with their full knowledge that the risk of being harmed or killed facing inmates in Five North was higher than in other areas of the Jail.

621.

Shamar McLeroy would have lived had John Doe No. 5 and John Doe No. 6 performed ministerial duties.

622.

 John Doe No. 5 and John Doe No. 6 waived official immunity afforded to individual public employees because of the negligent performance of ministerial acts.

623.

Due to the negligent performance of ministerial acts by John Doe No. 5 and John Doe No. 6, they have violated Georgia law.

624.

The deliberate indifference by John Doe No. 5 and John Doe No. 6 to a known and substantial risk of serious harm to Shamar McLeroy violated the Fourteenth Amendment.

625.

The conduct of John Doe No. 5 and John Doe No. 6  was a direct and proximate cause of Shamar McLeroy's injuries, pain and suffering, and death.

## **PUNITIVE DAMAGES**

The conduct of Defendants, as described above, rose to the level of reckless, willful, and wanton failure to act, which demonstrated a conscious deliberate indifference to the consequences of their actions and entitles plaintiffs to an award of punitive damages as allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray and demand as follows:

(A)    That Process and Summons issue, as provided by law, requiring Defendants to appear and answer the Complaint;

(B)    That service be had upon Defendants as provided by law;

(C)    That the Court award a judgment in favor of plaintiff Rosie Gray for pain and suffering as well as funeral, medical, and other expenses resulting from the injury and death of the decedent Shamar McLeroy.  Plaintiff James McLeroy seeks a judgment for the full value of the life of the decedent.  Both plaintiffs seek punitive damages.

(D)    That plaintiffs have a trial by jury as to all issues;

(E)    That plaintiffs have such other and further relief as this Court may

deem just and proper;

(F)    An award of costs, expert witness fees, and attorneys' fees pursuant to

42 U.S.C. §1988;

(G)    An award of standard costs on all Counts.

*Christopher Farmer*
_____
Christopher M. Farmer, Esq.
State Bar No. 255170
Attorney for Plaintiff

Johnson & Ward, LLC
1629 Monroe Drive, NE
Atlanta, GA 30324-5003
(404) 524-5626
cfarmer@johnsonward.com

*ReShea Balams*
_____
ReShea Balams, Esq.
State Bar No. 557046
Attorney for Plaintiff

The Balams Firm
290 South Main Street
Suite 500
Alpharetta, GA 30009
(404) 445-2005
rbalams@balamslaw.com


*Matthew Farmer*
_____
Matthew Farmer, Esq.
Fla. Bar No. 0793469
Attorney for Plaintiff


FARMER & FITZGERALD
800 W. DeLeon Street
Tampa, FL 33606
(813)228-0095
MattFarmer1@aol.com
*Pro hac vice application pending*